# EXHIBIT A

 

May 20, 2019

<u>VIA ELECTRONIC MAIL OR PORTAL</u>

FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, DC 20528-0655
Email: foia@hq.dhs.gov

FOIA Officer
U.S. Customs and Border Protection
90 K Street, NE
FOIA Division
Washington, DC 20229
Website: https://foiaonline.gov/foiaonline/action/public/request

FOIA Officer/Public Liaison
U.S. Citizenship and Immigration Services
National Records Center
FOIA/PA Office
P.O. Box 648010
Lee's Summit, Mo. 64064–8010
Email: uscis.foia@uscis.dhs.gov

Re:  <u>Freedom of Information Act (FOIA) Request</u>

Dear FOIA Officers:

The American Immigration Council and the ACLU Immigrants' Rights Project ("Requesters") submit this letter as a request for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq*.

## 1.    REQUEST FOR INFORMATION

The Requesters request records[1] that, on or after January 20, 2017, were prepared, received, transmitted, and/or collected by Department of Homeland Security (DHS), its Office of General Counsel, and/or its components, U.S. Customs and Border Protection (CBP) and U.S. Citizenship and Immigration Services (USCIS), that relate to CBP officers or agents conducting interviews to determine and/or determining whether an individual has a credible fear of persecution pursuant to section 235(b)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(1)(B). Please construe this as an ongoing FOIA request, so that any responsive records that come within the possession of the agency prior to the final response to this FOIA request be considered within the scope of the request.

In particular, the Requesters request records regarding changes to the credible fear process that either have been implemented since January 20, 2017 or are currently planned, that relate to the officers or agents of CBP conducting interviews and making determinations regarding credible fear under 8 U.S.C. § 1225(b)(1)(B).

The requested records include, but are not limited to, those describing, referring, or relating to:

(1)    Consideration of or decisions about whether CBP officers or agents are to be authorized to conduct credible fear interviews.

(2)    Policies, procedures, recommendations, guidelines or memorandum of agreement relating to CBP officers or agents conducting credible fear interviews, including any changes to pre-existing policies, procedures, recommendations, guidelines or memorandum of agreement related to credible fear interviews.

(3)    Training materials developed, used or intended to be used to train CBP officers or agents to conduct credible fear interviews, including but not limited to lesson plans and Power Point presentations, and any memoranda implementing such trainings.

(4)    Protocols and/or policies for evaluating whether a CBP officer or agent will be authorized to conduct credible fear interviews, including but not limited to any tests or other evaluative materials relating to the agent or officer's knowledge acquired from training, and/or the performance of CBP officers or agents while conducting mock or actual credible fear interviews.

---

[1]    The term "records" as used herein includes, but is not limited to: communications, correspondence, directives, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training materials, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

(5)     Supervision of CBP officers or agents who are authorized to conduct credible fear interviews, including but not limited to which DHS component (USCIS or CBP) and officials within that component will be responsible for carrying out the supervision and the manner in which the supervision will be conducted.

(6)     The respective roles of USCIS and CBP with respect to CBP officers and agents who are authorized to conduct credible fear interviews, including but not limited to training, supervision, review of credible fear determinations, and monitoring for quality assurance and compliance with the law, regulations and agency policies.

(7)     Any concerns, whether practical, legal, or otherwise, that would weigh against giving CBP officers or agents authority to conduct credible fear interviews.

(8)     Communications, whether electronic or conventional, within or among, DHS, CBP, USCIS, or any of their agents, agencies, subagencies, or offices, relating to CBP officers or agents conducting credible fear interviews, including but not limited to

    a.     All communications regarding the planning and/or implementation of any proposal for CBP officers or agents to conduct credible fear interviews.
    b.     All communications regarding the training, evaluation, and supervision of CBP officers or agents with respect to credible fear interviews.

(9)     Communications, whether electronic or conventional, between DHS, CBP, USCIS, or any of their agents, agencies, subagencies, or offices, and President Trump's Administration, including the Executive Office of the President, and/or staff working from the White House, relating to CBP officers or agents conducting credible fear interviews, including but not limited to

    a.     All communications regarding consideration of or decisions about whether CBP officers or agents are to be authorized to conduct credible fear interviews.
    b.     All communications regarding the planning and/or implementation of any proposal for CBP officers or agents to conduct credible fear interviews.
    c.     All communications regarding the training, evaluation, and supervision of CBP officers or agents with respect to credible fear interviews.

(10)    DHS' May 1, 2019 supplemental budget request to the U.S. House of Representatives, titled Southern Border Humanitarian Crisis Supplemental Request, requesting, inter alia, "$23M to begin implementing the Border Patrol credible fear screening program," including any and all records relating to this request.

The Requesters request that any records that exist in electronic form be provided in their native electronic format on a compact disc, digital video disk, or equivalent electronic medium. Requesters ask that any documents stored in Portable Document Format ("PDFs") be provided as individual files in a searchable PDF format. Finally, Requesters ask that reasonable metadata be transmitted along with files, including but not limited to maintaining parent-child relationships between emails and their attachments, author information, as well as date and time stamp information. If any of the requested records or information are not kept in a succinct format, we request the opportunity to view the documents in your offices.

In addition to the request for expedited processing below, Requesters additionally ask that all records be provided on a rolling production schedule. Specifically, Requesters request that any records produced by the Department and its components be made available as soon as reasonably practicable, or on a timeframe agreed upon by Requesters.

If, under applicable law, any of the information requested is considered exempt, please describe in detail the nature of the information withheld, the specific exemption or privilege upon which the information is withheld, and whether the portions of withheld documents containing non-exempt or non-privileged information have been provided.

## 2.    Request for Expedited Processing

Expedited processing is warranted because there is "an urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(1)(ii). The urgent public concern is the change in the credible fear process such that CBP law enforcement officers or agents will now make credible fear determinations – a role that has belonged exclusively to USCIS asylum officers. These changes will affect the many thousands of noncitizens who arrive at the United States border seeking asylum status because of persecution in their home countries, as well as any family members who reside in the United States. These asylum-seekers and their attorneys have an urgent need to know how this change will impact the evaluation of their asylum claims. The general public has an urgent need to understand plans to divert officers from law enforcement to non-law enforcement roles. Multiple news reports discussing the change in the role of CBP officers have highlighted the significance of such a change during a time when DHS has described a law enforcement "crisis" and a surge in asylum-seekers at the U.S.-Mexico border.[2] Any change to the

---

[2]    *See, e.g.*, Reuters, *U.S. Will Assign Dozens of Border Agents to Migrant Asylum Interviews*, N.Y. Times, May 9, 2019, *available at* https://www.nytimes.com/reuters/2019/05/09/world/americas/09reuters-usa-immigration.html?searchResultPosition=4; Nick Miroff, *U.S. asylum screeners to take more confrontational approach as Trump aims to turn more migrants away at the border*, Wash. Post, May 7, 2019, *available at* https://www.washingtonpost.com/immigration/us-asylum-screeners-to-take-more-confrontational-approach-as-trump-aims-to-turn-more-migrants-away-at-the-border/2019/05/07/3b15e076-70de-11e9-9eb4-0828f5389013_story.html?utm_term=.55cfafbaec7c; Anna Giaritelli, *Trump administration to give Border Patrol agents authority to decide asylum claims on the spot: Sources*, Wash. Examiner, May 2, 2019, *available at* https://www.washingtonexaminer.com/news/trump-

role of CBP is therefore a matter of urgent public concern. Finally, Requesters' proven track record as organizations "primarily engaged in disseminating information" is discussed below in the Request for Fee Waiver.

## 3.    REQUEST FOR WAIVER OF FEES

Requesters ask that the agency waive all fees associated with this FOIA request. Such a waiver is warranted because disclosure of the information is "…likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of institution). In addition, the Requesters have the ability to widely disseminate the requested information. *See Judicial Watch v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) (finding a fee waiver appropriate when the requester explained, in detailed and non-conclusory terms, how and to whom it would disseminate the information it received).

### A.    *Disclosure of the Information Is in the Public Interest*

Disclosure of the requested information will contribute significantly to public understanding of government operations and activities related to the credible fear process and the change in responsibilities of CBP officers or agents. Such information is of great public concern as shown by the interest surrounding reports that CBP officers or agents will begin conducting credible fear interviews. Multiple leading national newspapers have published articles that discuss plans for CBP officers to make credible fear determinations.[3] Because the credible fear process applies to tens of thousands of asylum-seekers each year who are either apprehended at the US border or seek admission, the requested information is critically important to assist attorneys, immigrants, and the general public in understanding how the U.S. government plans to implement this change to the credible fear process. This information is likewise essential to allow the public to understand how the U.S. government employs its law enforcement officers.

As discussed below, the Requesters have the capacity, intent and demonstrated ability to disseminate the requested information to a broad cross-section of the public.

The American Immigration Council is a non-profit organization established to increase public understanding of immigration law and policy, advocate for the fair and just administration of the immigration laws, protect the legal rights of noncitizens, and educate the public about the enduring contributions of America's immigrants. The Council's policy department researches issues related to immigration, and regularly provides information to leaders on Capitol Hill, the media, and the general public. The Immigration Council has synthesized and disseminated

---

administration-to-give-border-patrol-agents-authority-to-decide-asylum-claims-on-the-spot-sources.

[3]    *Id.*

information from prior FOIA requests to facilitate the sharing of this information with a broad public audience.[4]

The ACLU is a nationwide, nonprofit, and nonpartisan organization dedicated to protecting civil rights and civil liberties in the United States. It is the largest civil liberties organization in the country, with offices in the fifty states and over one million members. It publishes news briefings, right-to-know handbooks, and other materials that are widely disseminated to the public. These materials are made available to everyone—including tax-exempt organizations, non-profit groups, and law students and law faculty—for either no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its high-traffic website, http://www.aclu.org.  The website provides in-depth information on a range of civil liberties issues, addresses civil liberties issues that are currently in the news, and contains hundreds of documents relating to the ACLU's work. The website specifically features information obtained through FOIA.  *See, e.g.*, http://www.aclu.org/safefree/torture/torturefoia.html; http://www.aclu.org/patriot_foia/index.html.  In addition, the ACLU publishes a print magazine with a circulation of over 400,000, as well as an electronic newsletter distributed to subscribers via email; airs regular podcasts; maintains a blog, www.aclu.org/blog; releases information via social media platforms such as Facebook and Twitter; and has produced a television series on civil liberties issues.

Requesters will analyze and post information obtained through this FOIA request on their publicly accessible websites. Additionally, all Requesters have regular contact with national print and news media and may share information gleaned from FOIA disclosures with interested media.

B. *Disclosure of the Information Is Not Primarily in the Commercial Interest of the Requesters*

Requesters are not-for-profit organizations. We seek the requested information for the purpose of disseminating it to members of the public who have access to our public website and other free publications, and not for the purpose of commercial gain.

\* \* \*

Thank you for your prompt attention to this request.  If you have any questions, please do not hesitate to contact us by telephone or email.

---

[4]     *See, e.g.*, Still No Action Taken: Complaints Against Border Patrol Agents Continue to Go Unanswered, (Aug. 2017), *available at* https://www.americanimmigrationcouncil.org/research/still-no-action-taken-complaints-against-border-patrol-agents-continue-go-unanswered; American Immigration Council, Fact Sheet, CBP Restrictions on Access to Counsel, *available at* https://www.americanimmigrationcouncil.org/sites/default/files/foia_documents/access_to_counsel_cbp_foia_factsheet.pdf.

Sincerely,

Mary Kenney
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
Tel.: 202-507-7512
Email: MKenney@immcouncil.org


Jennifer Chang Newell
American Civil Liberties Union Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
Tel.: 415.343.0774
Email: JNewell@aclu.org