**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL; and TAHIRIH JUSTICE CENTER,<br><br>           Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>           Defendants. | Civil Action No. 19-2965 (RC) |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

i

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................. 1

II.  Customs and Border Protection Has Failed to Show that It Conducted a
     Reasonable Search ...................................................................................................... 3

III. Defendants DHS and USCIS Improperly Withheld Records ..................................... 6

   A.   Defendants DHS and USCIS Improperly Rely on the Deliberative Process
        Privilege to Withhold Records ............................................................................ 6

   B.   Defendants DHS and USCIS Unlawfully Withheld Records Under
        Exemption (b)(6) and (7)(c) ................................................................................ 8

   C.   Defendants Do Not Demonstrate Foreseeable Harm from Disclosure ............. 12

   D.   Defendants Did Not Release All Reasonably Segregable Information ............ 14

IV.  Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*100Reporters LLC v. U.S. Dep't of Just.*,
  248 F. Supp. 3d 115 (D.D.C. 2017) ................................................................................... 6, 7
*A.B.-B. v. Morgan*,
  No. 20-CV-846 (RJL), 2020 WL 5107548 (D.D.C. Aug. 31, 2020) ........................................ 2
*Am. Immigr. Lawyers Ass'n v. Exec. Office for Immigr. Rev.*,
  830 F.3d 667 (D.C. Cir. 2016) .............................................................................................. 8, 10
*Amnesty Int'l USA v. C.I.A.*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) ......................................................................................... 5
*Hunton & Williams LLP v. U.S. EPA*,
  248 F. Supp. 3d 220 (D.D.C. 2017) ............................................................................................ 7
*Jud. Watch, Inc. v. U.S. Postal Serv.*,
  297 F. Supp. 2d 252 (D.D.C. 2004) ........................................................................................... 7
*Lesar v. U.S. Dep't of Just.*,
  636 F.2d 472 (D.C. Cir. 1980) .................................................................................................... 9
*Multi AG Media LLC v. U.S. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) ................................................................................................ 10
*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) .................................................................................................. 8
*Pub. Emps. for Env't Resp. v. Env't Prot. Agency*,
  288 F. Supp. 3d 15 (D.D.C. 2017) ............................................................................................ 14
*Pub. Emps. for Env't Resp. v. U.S. Section Int'l Boundary & Water Comm'n*,
  839 F. Supp. 2d 304 (D.D.C. 2012) ............................................................................................ 4
*Reps. Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ................................................................................................ 7, 13
*Roth v. Dep't of Just.*,
  642 F.3d 1161 (D.C. Cir. 2011) ................................................................................................ 12
*Trea Senior Citizens League v. U.S. Dep't of State*,
  923 F. Supp. 2d 55 (D.D.C. 2013) .............................................................................................. 7
*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) .................................................................................................................. 10
*Weisberg v. U.S. Dep't of Just.*,
  627 F.2d 365 (D.C. Cir. 1980) .................................................................................................... 5

**Statutes**

5 U.S.C. § 552(b) ............................................................................................................................ 14
8 U.S.C. § 1225(b)(1)(E) ................................................................................................................ 10

**Other Authorities**

Brandon Judd, *Cross-designate and train Border Patrol agents as asylum officers with limited
  authority to conduct "credible fear" interviews*, BPunion.org (Apr. 3, 2019),
  https://bit.ly/3jvSwnp ............................................................................................................ 2, 3
Dara Lind, *Leaked Border Patrol Memo Tells Agents to Send Migrants Back Immediately —
  Ignoring Asylum Law*, ProPublica (Apr. 2, 2020, 6:30 PM), https://bit.ly/3fV2DRN ............... 2
H.R. REP. NO. 114-391 (2016) ....................................................................................................... 13
S. REP. NO. 114-4 (2015) ................................................................................................................ 13

I.       **Introduction**

Defendants continue to improperly withhold information responsive to Plaintiffs' Freedom of Information Act (FOIA) requests. Customs and Border Protection (CBP) seeks to minimize its role as collaborator and driving force behind the pilot program, defending its decision not to search for five of the seven categories for expedited production and failing to describe the searches it did purportedly conduct. The Department of Homeland Security (DHS) and U.S. Citizenship and Immigration Services (USCIS), relying on vague and generic descriptions in their *Vaughn* indexes, maintain that the challenged records are entirely deliberative, even though they post-date the admitted start of the program. Defendants similarly improperly rely on boilerplate language to assert that foreseeable harm would result from disclosure. Finally, Defendants continue to refuse to disclose the names of the Border Patrol agents involved in the program (despite having disclosed the names and email addresses for USCIS officers involved in the same program), without adequately considering the public's significant interest in identifying the Border Patrol interviewers. Because Defendants have failed to meet their burden under FOIA to show CBP conducted a reasonable search or to justify the challenged withholdings, the Court should grant Plaintiffs' motion for summary judgment.

The record, including the undisputed facts, supports this conclusion. As Defendants concede, the pilot program at issue in this FOIA litigation—a "collaboration" between USCIS and CBP in which Border Patrol agents conducted credible fear interviews—began in April 2019, before the challenged records in this case. Dkt. 33-1 at 1-2; Dkt. 33-2 at 8. It was a program driven by CBP's own Border Patrol agents. *See* Brandon Judd, *Cross-designate and train Border Patrol agents as asylum officers with limited authority to conduct "credible fear"*

1

*interviews*, BPunion.org (Apr. 3, 2019), https://bit.ly/3jvSwnp [hereinafter "*Cross-designate Border Patrol agents*"].

The program was fatally flawed. As another court within this district found, the Border Patrol agents were poorly trained, likely in violation of federal law, and as a result, "less likely to ask the right questions of an asylum seeker, or for that matter, to gather the facts necessary to make an accurate determination of whether an asylum seeker has a credible fear of persecution." *A.B.-B. v. Morgan*, No. 20-CV-846 (RJL), 2020 WL 5107548, at *8 (D.D.C. Aug. 31, 2020); *see* Dkt. 29-6 ¶ 12 (describing multiple instances of poorly trained officers conducting inadequate interviews and suggesting that victims of sexual assault were responsible for their own abuse). Nevertheless, Defendants subjected thousands of asylum seekers to credible fear interviews conducted by these inadequately trained law enforcement officers while simultaneously hiding that the interviewers were Border Patrol agents and not in fact asylum officers—which, in turn, has prevented people from effectively challenging their negative credible fear determinations because they are unable to definitively identify the interviewer as a member of the Border Patrol. Dkt. 29-6 ¶¶ 11, 14, 21-24; *see* Dkt. 33-1 at 2. Despite their law enforcement background and limited training, Border Patrol agents continue to play a role in screening fear-based claims of individuals fleeing persecution. Dara Lind, *Leaked Border Patrol Memo Tells Agents to Send Migrants Back Immediately — Ignoring Asylum Law*, ProPublica (Apr. 2, 2020, 6:30 PM), https://bit.ly/3fV2DRN. Thus, the public retains a significant interest in the disclosure of these improperly withheld records.

## II. Customs and Border Protection Has Failed to Show that It Conducted a Reasonable Search

In defense of its failure to search for five of the seven categories for expedited production,[1] CBP maintains that it played a "limited role" in the pilot program, which was "solely [to] provide personnel to USCIS." Dkt. 33 at 2. In support of this position, CBP submits a supplemental declaration from Patrick Howard, Branch Chief of the CBP FOIA Division, to which it attaches a July 2019 Memorandum of Agreement (MOA) between USCIS and CBP. Dkt. 33 at 2; Dkt. 33-2. CBP argues that the Court should assume that the agency's search was reasonable because "an agency may rely on the employee with the relevant knowledge about the records at issue." Dkt. 33 at 3. CBP is incorrect.

First, Defendants' record belies CBP's claim that it played a limited role in the pilot program—a program driven by its own Border Patrol agents. *See Cross-designate Border Patrol agents*. The July 2019 MOA calls for "collaboration" between CBP and USCIS and provides that USCIS will provide feedback to CBP regarding the performance of Border Patrol agents upon request. Dkt. 33-2 at 8-9. The MOA requires CBP, among other things, to "ensure that [Border Patrol agents and Supervisory Border Patrol agents] are not exercising their law enforcement officer duties while on the [Task Force] assignment" and to "[u]pon notice from USCIS, reassign

---

[1] As discussed in Plaintiffs' motion for summary judgment, the parties negotiated seven prioritized categories for expedited production. Dkt. 29-2 at 13-14. Only CBP met the deadline for an expedited search and only CBP limited its search to the seven expedited categories. *Id.* Plaintiffs agreed to consider whether the narrowed production would satisfy Plaintiffs' FOIA requests but maintain that it is premature to make that determination while the adequacy of CBP's search remains in dispute. *Id.* at 13 n.2. However, Plaintiffs note that DHS' supplemental *Vaughn* indexes indicate that CBP is custodian to several records that, if not produced through an adequate search for the prioritized categories should be produced under a broader search for responsive records. *See* Dkt. 33-3 at 8 (discussing a final version of an issue paper dated April 27, 2020); *id.* at 9 (discussing a final version of a briefing memo dated April 9, 2019); *id.* at 11 (discussing a final version of a memo dated February 18, 2020).

3

[agents] who are not performing credible fear interviews at an acceptable level of competence."
*Id.* at 9. Moreover, the third declaration from Catrina M. Pavlik-Keenan, Deputy Chief FOIA Officer for DHS, illustrates the central role CBP played in the pilot. *See, e.g.,* Dkt. 33-3 ¶ 6 (stating that "DHS will consult with CBP" regarding a potential supplemental release of responsive records); *id.* ¶ 7 (describing an internal email chain regarding legal issues related to the pilot between DHS Headquarters, CBP, and USCIS); *id.* at 8 (stating "CBP has confirmed that the most recent working version of [an issue paper regarding the pilot program not produced or uncovered in DHS' search] is dated April 27, 2020"); *id.* at 9 (suggesting that the final version of a responsive document identified as a "Draft Briefing Memo" that was not produced or uncovered in DHS' search is in CBP custody).

Second, while an agency may, as a general matter, rely on subject matter experts when crafting a search, this does not excuse the agency from conducting *any* search for five of the seven prioritized categories. To the extent that the agency is relying on employee expertise to justify the decision not to search for those categories, it has failed to identify the relevant employee or his or her expertise. Mr. Howard admits that "the extent of [his] knowledge" regarding the pilot program is limited to the July 2019 MOA. Dkt. 33-2 ¶ 7. Moreover, in justifying the decision not to search for certain categories of records, Mr. Howard merely repeats that "CBP determined . . . USCIS would be the proper custodian." *Id.* ¶¶ 12-14. Thus, in contrast to the cases on which CBP relies, it is impossible to tell whether the employee making that determination had "significant experience" in the subject matter – or any experience at all. *See Pub. Emps. for Env't Resp. v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 317–18 (D.D.C. 2012), *aff'd in part, vacated in part, remanded sub nom.* 740 F.3d 195 (D.C. Cir. 2014) (citing a declaration where the employee's name, title, role, and "significant

4

experience" is identified); *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 499 (S.D.N.Y. 2010) (describing a search that included "the person most knowledgeable regarding" the subject of the search).

Finally, even with a supplemental declaration from Mr. Howard, CBP has still failed to describe the search it did conduct. In particular, CBP has failed to explain what it did to search for "[a]ny written policy directives, written policy guidelines, or written procedures concerning the expansion of the pilot program that reportedly trained approximately 60 CBP officers to conduct [credible fear interviews or reasonable fear interviews]." Dkt. 33-2 ¶¶ 8(e), 15. Instead, Mr. Howard asserts that "CBP did not produce documents . . . because expansion of the Pilot Program to include U.S. Customs and Border Protection officers post-dated the date upon which CBP initiated its search in the instant FOIA case." *Id.* ¶ 15. As an initial matter, the phrase "expansion of the Pilot Program to include U.S. Customs and Border Protection officers" is inconsistent with the record, because the entire program centered around CBP officers—unless in this one instance CBP is making a distinction between Border Patrol agents and other CBP officers. *See id.* ¶ 8 (listing the seven prioritized categories as seeking information regarding "CBP officers" conducting credible fear interviews). Regardless, while this statement suggests that no expansion had begun prior to CBP's search for records, it is unclear whether any *records* related to an expansion existed at the time of any search, nor does it describe the search CBP conducted to find any responsive records. *See id.* ¶ 15. Because "the agency affidavits . . . do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [Plaintiffs] to challenge the procedures utilized," CBP has failed to establish that any search it did conduct was reasonable. *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 371 (D.C. Cir. 1980).

**III.    Defendants DHS and USCIS Improperly Withheld Records**

USCIS and DHS have failed to meet their burden to justify withholding the challenged records under the deliberative process privilege, have failed to show with particularity any foreseeable harm that would result from producing these records, and even if certain records are properly withheld in part, have failed to establish that they adequately segregated non-exempt information. On review of Defendants' supplemental *Vaughn* indexes, however, Plaintiffs are no longer challenging DHS's decision to withhold the following three records: "RE interviews suspended" (Dkt. 33-3 at 9); "AS1 Immigration Strategy Tracker (revised 11 14 19)" (Dkt. 33-3 at 11); and "AS1 Immigration Strategy Tracker 5.20" (Dkt. 33-3 at 11). However, Plaintiffs continue to object to Defendants' decision to withhold the remaining challenged records.

**A.    Defendants DHS and USCIS Improperly Rely on the Deliberative Process Privilege to Withhold Records**

Defendants DHS and USCIS have done little to address their failure to identify the nature of the specific deliberative process at issue or the function and significance of each document in any deliberative process. This failure is especially pronounced where the challenged withheld records post-date the April 2019 decision to implement the pilot. *See* Dkt. 33-1, Defendants' Response to ¶ 1 at 1-2 ("undisputed" that the pilot program began in April 2019). Rather, Defendants' brief mirrors their deficient *Vaughn* indexes by speaking only in generalities and repeating boilerplate legal standards. *See* Dkt. 33 at 4-10. To the extent Defendants offer any new argument, it is that because the program at issue here is a pilot, all records related to that pilot are "part of a larger decision on how to handle noncitizens seeking asylum." *Id.* at 5. But this cannot be so—the privilege is not so broad. *See 100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 153 (D.D.C. 2017) (rejecting the agency's broad view of the deliberative process where it "would create a four-year umbrella effectively shielding all agency action from

6

review without accounting for any subsidiary agency decisions"). "[A]n agency must establish at least what deliberative *process* is involved and the role that withheld documents played in that process." *Id.* at 151 (emphasis in original). As discussed in Plaintiffs' cross-motion and opposition, Defendants have failed to provide the specificity and detail needed to meet their high burden to justify withholding the challenged documents. Dkt. 29-2 at 25-32; *see Hunton & Williams LLP v. U.S. EPA*, 248 F. Supp. 3d 220, 241 (D.D.C. 2017) ("[A] 'broad and opaque description of the deliberative process involved does not provide the Court with enough detail about whether these documents are deliberative and predecisional.'") (quoting *Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 68 (D.D.C. 2013)).

While both USCIS and DHS have submitted supplemental *Vaughn* indexes, those indexes do not add the required level of specificity necessary to meet their "heightened" burden under the deliberative process privilege. *See Hunton & Williams*, 248 F. Supp. 3d at 243. USCIS has only added to its description of the record identified as "USCIS draft document of Asylum Facts and Stats as of July 15, 2019." Dkt. 33-4 at 2. But USCIS merely repeats that the document is "not finalized" and does not "accurately reflect any final agency statistics on credible fear findings or credible fear interview rates." *Id.* Regardless of whether the record is finalized, "to fall within the deliberative process privilege, the drafts must also be deliberative in content." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 367 (D.C. Cir. 2021); *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (holding that even where a document is predecisional, "drafts are not presumptively privileged" and the agency must still "identify the 'function and significance in the agency's decisionmaking process' of the redacted and withheld documents") (internal citation omitted). To embrace USCIS' argument would mean that the government could conceal factual information on the grounds that it was deciding whether or not

7

to release it. That is not how the deliberative process privilege works. Final or not, "[u]nder the deliberative process privilege, factual information generally must be disclosed." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

The supplemental indexes from DHS similarly add little, other than to reiterate that "an issue paper titled USBP Credible Fear Pilot Program" and a document "titled 'Department of Homeland Security, Strategy to Address Crisis at the Southern Border'" are "not the final version." Dkt. 33-3 at 8. Notably, with respect to the second document, DHS' supplemental index includes *less* information about the substance of the record in dispute. *Compare* Dkt. 33-3 at 8 *with* 28-3 at 45. As Plaintiffs have already shown, it is not enough for Defendants to rely on the label "draft." Dkt. 29-2 at 23-24. Identifying a record as "non-final" is not a substitute for establishing that it is pre-decisional and deliberative. *Id.* DHS' remaining additions to the *Vaughn* index address segregability, which Plaintiffs will discuss below, or add virtually no substance. Dkt. 33-3 at 9 (asserting that certain statistics are "inextricably intertwined with deliberative and predecisional information"); *id.* at 11 (adding only that a "document entitled 'Issues for Discussion between CBP and USCIS' which consists of 8 pages of confidential, internal communications pertaining to a number of immigration programs and initiatives"). Defendants have not met their burden to show that the remaining challenged records fail within Exemption 5.

### B. Defendants DHS and USCIS Unlawfully Withheld Records Under Exemption (b)(6) and (7)(c)

Defendants justify the withholding of CBP officer names on the basis that CBP officers are law enforcement officers. Dkt. 33 at 7-8. But the fact that CBP officers generally serve as law enforcement officers cannot justify a *per se* redaction of names. *See e.g., Am. Immigr. Lawyers Ass'n v. Exec. Office for Immigr. Rev.*, 830 F.3d 667, 676 (D.C. Cir. 2016) (finding that agency

8

had not met its burden in releasing records with blanket redactions of immigration judges' names under Exemption (b)(6) and remanding for particularized justifications for the redactions). As Defendants note, courts have protected the release of law enforcement officer names where "agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980). Neither Defendants nor their declarants offer any evidence or even suggestion that the pilot program at issue here relates to matters of "secrecy" or that officers "conceivably could" be subjected to either "annoyance" or "harassment," such that privacy interests would need to override disclosure. *See* Dkt. 33 at 7-8. In meeting their burden to claim an exemption under FOIA—which this Court should construe narrowly—Defendants must do more than offer conclusory legal statements to shield themselves from providing records that are otherwise subject to release. There is no indication in the record or in Defendants' declarations that CBP officers will be the target of harassment, or even "annoyance," if the public learns their names. *See also,* Dkt. 29-6 ¶ 13 ("To my knowledge, no asylum seeker has ever harmed, threatened to harm or otherwise harassed a federal officer.").

      Defendants have also offered no explanation as to why the release of CBP officers names in this instance will create any different or weightier privacy concerns than the release of USCIS employees' names, given Defendants' position that USCIS too plays a law enforcement function in this context. Dkt. 33 at 7. Defendants' decision to release the names and email addresses of all USCIS officers involved in the same program belies their claimed privacy interest on behalf of CBP officers doing the same work. *See* Dkt. 29-5 at 19 (listing the names and email addresses for approximately thirty USCIS asylum officers); *see also Am. Immigr. Lawyers Ass'n*, 830 F.3d

9

at 676 (in ordering remand, requiring "a more particularized showing for defined subgroups" for continued blanket redactions of immigration judges' names).

Plaintiffs maintain that neither Exemptions (b)(6) nor (b)(7)(C) can justify the withholding of CBP officer names when the need for this information is balanced against the public's right to know. With regard to Exemption (b)(6), any privacy concerns for CBP officers here is *de minimis* given that the records Plaintiffs seek do not implicate medical or personnel files. *See Multi AG Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008), *superseded by statute, 7 U.S.C. § 8791, as to release of GPS data, as recognized in Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1117 (9th Cir. 2010). Further, the release of CBP officer names does not constitute an unwarranted invasion of privacy for purposes of Exemption (b)(7)(C) under the circumstances here. The privacy interests implicated in this context simply do not outweigh the public's need to know the identity of Border Patrol agents who conducted screening interviews tasked by statute to properly trained asylum officers. 8 U.S.C. § 1225(b)(1)(E); *see U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal citation omitted) ("This [FOIA's] basic policy of 'full agency disclosure unless information is exempted under clearly delineated statutory language,' indeed focuses on the citizens' right to be informed about 'what their government is up to.'"). Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. Contrary to Defendants' contention, Plaintiffs *do* allege that Border Patrol agents engaged in misconduct in conducting credible fear interviews. *See* Dkt. 29-6 ¶ 12 (noting that practitioners were able to confirm that in some instances, Border Patrol agents accused asylum seekers who endured sexual assault that what they endured was "their fault.").

Further, Defendants oversimplify Plaintiffs' argument for disclosure of CBP officer names as reliant on the fact that a court deemed the pilot program unlawful. Dkt. 33 at 8. While the illegality of the pilot program is certainly a strong consideration here, this is not the extent of Plaintiffs' challenge to the redaction of officer names. The public's interest in remedying the adverse consequences for asylum seekers that flowed from this unlawful program must also be considered in assessing the propriety of the agencies' redaction of officer names. *See* Dkt. 29-2 at 35-36. As Plaintiffs have argued, asylum-seekers have a strong interest in being able to identify a CBP officer as having conducted the asylum screening interview in their individual case to challenge the denial of an unlawful removal order. *See id.* Plaintiffs' declarant, Shalyn Fluharty, detailed the tangible negative impact of various policies promulgated to curtail asylum in the United States that resulted in an increase in negative credible fear determinations during the time that the pilot program had been in force. Dkt. 29-6 ¶ 6 (noting that during the summer of 2019, credible fear passage rates dropped from more than 99% to approximately 10%). In Ms. Fluharty's assessment, "one of the primary changes that lead [sic] to this drastic shift was the government's decision to use Border Patrol agents . . . rather than expertly trained asylum officers . . . ." *Id*. at ¶ 8. Practitioners sought to ascertain the identities of CBP officers in order to undo the negative credible fear findings which meant that asylum seekers with legitimate claims could be subject to erroneous removal orders. *Id*. at ¶¶ 17-18 (describing efforts to learn identities of CBP officers to request reconsideration of the negative credible fear finding). The efforts to undo erroneous removal orders continues into the present, adding to the urgency of the public need to know these identities. *Id*. at ¶¶ 22-23. Given that a district court has deemed the program likely unlawful, the asylum seekers who suffered adverse consequences from this unauthorized policy should be able to seek redress to undo these consequences—which include

removal without a hearing to life-threatening danger. *See Roth v. Dep't of Just.*, 642 F.3d 1161, 1182 (D.C. Cir. 2011) (ordering release of names upon balancing interests under (b)(7)(C) against the public interest in knowing whether the FBI was withholding information that could corroborate death row inmate's innocence claim).

Given that the release of CBP officer names does not constitute an unwarranted invasion of privacy and constitutes instead a *de minimis* privacy interest, if any, Defendants have not met their burden of demonstrating that the officers' interests in privacy outweigh the public's strong need for this information.

### C. Defendants Do Not Demonstrate Foreseeable Harm from Disclosure

Defendants never meaningfully engage with the fact that boilerplate statements of harm are not sufficient to sustain redactions. *See* Dkt. 33 at 6. Defendants concede, in fact, that in some cases the statements of harm provided in the *Vaughn* index are nearly identical. *Id.* They argue, however, that similar articulations of harm are of "no import" because "the records all relate to the agencies' broader decision-making about how to address the surge in asylum seekers along the southern border." *Id.* But this is not what the record shows. Rather, to the extent it is illuminating, the record suggests that the challenged records contain information about the details of an already operating program,[2] facts and statistics,[3] or prepared public statements.[4] For

---

[2] *See* Dkt.33-4 at 3 (describing May 2019 "[d]ocumentation about how the pilot program would work to include purpose, roles, responsibilities, training plan, workforce, and resources" and "[i]nformation about how many CBP employees will receive training and descriptions about the training CBP officers will receive"); Dkt. 33-3 at 8 (describing May 2019 "issue paper titled USBP Credible Fear Pilot").
[3] *See* Dkt. 33-4 at 2 (discussing "USCIS draft document of Asylum Facts and Stats as of July 15, 2019"); Dkt. 33-3 at 9 (discussing "a briefing memo titled 'CBP Migration Statistics – Fiscal Year 2019 to Date'").
[4] *See* Dkt. 33-4 at 5-7 (listing a draft response to a media inquiry, draft talking points for the USCIS Director, and a cover letter and draft responses to a Government Accountability Office report).

12

the remaining records, the *Vaughn* index is so vague as to be unhelpful.[5]

The FOIA Improvement Act added a foreseeable harm requirement because of "concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." S. REP. NO. 114-4, at 2 (2015); *see also* H.R. REP. NO. 114-391, at 9 (2016) ("[T]here is concern that agencies are overusing these exemptions to protect records that should be releasable under the law."). "Congress was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citing H.R. REP. NO. 114-391, at 9–10). To demonstrate foreseeable harm, Defendants must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. "[B]oilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions" will not suffice. *Id.*

Yet boilerplate and generalities are precisely what Defendants have provided here. In her third declaration on behalf of DHS, Catrina M. Pavlik-Keenan states that "release of [the withheld] information will have a chilling effect and result in a lack of candor, likely inhibiting future communications between DHS officials and this will cause harm in the future to the Department's ability to foster the forthright internal discussions necessary for the efficient and proper decision-making." Dkt. 33-3 ¶ 5.  DHS' *Vaughn* index mirrors this boilerplate, repeating

---

[5] *See, e.g.*, Dkt. 33-3 at 8 (giving only the title of the document – "Department of Homeland Security, Strategy to Address Crisis at the Southern Border, Draft Outline"); *id.* at 11 (stating only that the records relate to "confidential, internal communications pertaining to a number of immigration programs and initiatives").

13

the same identical phrase for each record: "disclosure of this information would be misleading, as well as inhibit the candid discussion of issues between employees." Dkt. 33-3 at 8-11. USCIS' *Vaughn* index likewise repeats identical boilerplate for each withheld document. Dkt. 33-4 at 2-7; *see* Dkt. 29-2 at 29 n.4 (quoting boilerplate from USCIS *Vaughn* index). "[T]he assertion of harm in [the declaration and *Vaughn* indexes] is wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 370. Defendants have not met their burden to establish, in addition to the proper application of Exemption 5, that foreseeable harm would result from disclosure. *See id.* at 371 (finding agency failed to establish foreseeable harm with "cookie-cutter formulations [that] nowhere explain why actual harm would foreseeably result from release of the specific type of material at issue here").

      **D.**      **Defendants Did Not Release All Reasonably Segregable Information**

Defendants defend their boilerplate assertions of a "line-by-line" segregability analysis, Dkt. 33 at 9, but this Court has rejected the argument that "boilerplate, conclusory language" can support a segregability determination. *Pub. Emps. for Env't Resp. v. Env't Prot. Agency*, 288 F. Supp. 3d 15, 27 (D.D.C. 2017). Moreover, the *Vaughn* indexes themselves undermine this assertion. As discussed above, USCIS is withholding a document that consists of "facts and stats." Dkt. 33-4 at 2. DHS is withholding "statistical information," which it asserts is both "inextricably intertwined with deliberative and predecisional information" but also potentially subject to disclosure. Dkt. 33-3 at 9; *see id.* ¶ 6. Defendants must release all segregable, factual information included in the withheld records. *See* 5 U.S.C. § 552(b).

## IV.     Conclusion

For these reasons, the Court should grant summary judgment to Plaintiffs, order Defendant CBP to conduct an adequate search, and compel the production of the narrowed list of records that are the subject of Plaintiffs' current challenge.

Dated: August 17, 2021

Respectfully submitted,

 /s/ Emma Winger
Emma Winger (Admitted *Pro Hac Vice*)
American Immigration Council
1331 G Street, NW, Suite 200
Washington, DC 20005
(617) 505-5375
ewinger@immcouncil.org

Claudia Valenzuela (D.C. Bar No. IL0056)
Immigrant Legal Defense
1322 Webster Street, Suite 300
Oakland, CA 94612
(872) 256-1979
claudia@ild.org

*Attorneys for Plaintiffs*