UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, *et al.*,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 19-2965 (RC)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S MOTION FOR RECONSIDERATION

Defendants, Customs and Border Protection ("CBP"), U.S. Citizenship and Immigration Services ("USCIS"), and the Department of Homeland Security (the "Department") (collectively, "Defendants"), by and through undersigned counsel, move pursuant to Federal Rule of Civil Procedure ("Rule") 54(b) for reconsideration of the Court's March 11, 2022, Order denying Defendants' motion for summary judgment as to the redaction of CBP officers names in an email from Rhonda Roberts, dated July 23, 2019, under Exemptions 6 and 7(C). (ECF No. 38). As grounds for this motion, Defendants state as follows:

### BACKGROUND

On March 11, 2022, the Court ruled on the parties' motions for summary judgment. (ECF Nos. 37, 38). In ruling on Defendants' assertion of Exemption 6, the Court found, in part:

> The only privacy interest articulated in Defendants' opening brief beyond generic allusions to "invasion of the employee's personal privacy" is the potential exposure "to physical harm." Defs' Mem. at 21. But no detail is provided in the brief to support this fear. The declaration cited to support this fear merely states that "[t]he release of such information could subject those employees to reasonably foreseeable harms in the form of harassment as well as unwanted contact by the media and other[s]." 2d Pavlik-Keenan Decl. ¶ 46. More evidence than a bare

> assertion would be required to show a sufficient privacy interest. *See, e.g., Jud. Watch, Inc.*, 449 F.3d at 153 (finding "abortion-related violence [to be] a privacy interest for both the names and addresses of persons and businesses associated with mifepristone" in light of affidavits providing "evidence of abortion clinic bombings" and descriptions of "websites that encourage readers to look for mifepristone's manufacturing locations and then kill or kidnap employees").

Mar. 11, 2022, Mem. Op. at 41. In evaluating the information before it, the Court found:

> Defendants themselves are responsible for the outstanding public interest in this information; they do not dispute that "Border Patrol agents were instructed not to inform the individuals they were interviewing, or their attorneys, that they were Border Patrol agents" and that "[w]hen Border Patrol agents were directly asked whether they were Border Patrol agents they would only confirm that they were working as an asylum officer." Defs.' SUMF Resp. ¶ 3. In other words, Defendants prevented asylum seekers from learning whether their interviewers were USCIS or CBP officers. See Pls.' Opp'n & Mem. at 30. This is not a case of a poorly reasoned justification for disclosing officers' names. Here, the names appear to be necessary for the public to understand the government's operations. See U.S. Dep't of Def., 510 U.S. at 495.

*Id*. at 43. As to Exemption 7C, the Court found:

> However, even assuming that the document at issue was compiled for law enforcement purposes, it still fails the next requirement—the balancing test. For the same reasons given above for Exemption 6, any possible privacy interest at stake here is outweighed by the public interest in disclosure such that it could not "reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

*Id*. at 46. CBP was not previously consulted on the release of this document (an email to and from USCIS employees) or the justification for the redactions. *See* Second Supplemental Declaration of Patrick Howard Branch Chief in the Freedom of Information Act ("FOIA") Division at CBP ("2d Howard Decl.") ¶ 7.

## ARGUMENT

Defendants respectfully seek reconsideration of a part of the Court's March 11, 2022, Order. Specifically, for the reasons set forth in the attached Declaration of Patrick Howard, and pursuant to Rule 54(b), Defendants respectfully request that the Court rescind the part of the Order

directing Defendants to produce an email from Rhonda Roberts, dated July 23, 2019, without the names of the CBP agents redacted. Disclosure of the CBP officers' names in this current environment, absent a compelling public interest to do so, risks unnecessarily exposing that individual employee to potential safety threats.

**I.       Applicable Legal Standards.**

      **A.       Rule 54(b)**

Rule 54(b) applies to any order that "adjudicates fewer than all the claims" in a case and provides that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, 985 F. Supp. 2d 38, 42 (D.D.C. 2013) ("Rule 54(b) is the appropriate procedural mechanism for reconsideration where, as here, the challenged order . . . does not constitute a final judgment.").

This Rule recognizes the Court's "inherent power to reconsider an interlocutory order as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Jud. Watch, Inc. v. Dep't of Army,* 466 F. Supp. 2d 112, 123 (D.D.C. 2006) ("reconsideration of an interlocutory decision is available under the standard 'as justice requires.'"). "These considerations leave a great deal of room for the court's discretion, and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010). A court's discretion under Rule 54(b), however, is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C.

2005) (internal quotation marks omitted) (quoting *In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2004*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004)).

In sum, courts generally interpret this "abstract phrase narrowly and will grant a motion to reconsider only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *King & Spalding, LLP v. Dep't of Health & Human Servs.*, 395 F. Supp. 3d 116, 119–20 (D.D.C. 2019) (internal quotation marks omitted).

### B. FOIA Exemptions 6 and 7(C).

Exemptions 6 and 7(C) permit an agency to withhold personally identifiable information, though the language for each exemption differs slightly. Exemption 6 withholds "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) applies only to information "compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Courts have noted these linguistic variations. *See Nat'l Archives & Recs. Admin v. Favish*, 541 U.S. 157, 165–66 (2004). Based on those differences, the standard for disclosure under Exemption 7(C) is "somewhat broader" than the standard under Exemption 6. *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).

The agency presents a more than cognizable privacy interest here. The D.C. Circuit has "consistently supported the nondisclosure of names or other information identifying individuals that appear in law enforcement records," including investigators. *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003). That is partially because individuals, whether they be "suspects, witnesses, or investigators," have a "strong interest" not to be "associated unwarrantedly

4

with alleged criminal activity." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990). And that interest makes much sense—individuals associated with an unpopular agency action might be subject to public scrutiny and perhaps harassment. *See Lesar v. Dep't of Just.,* 636 F.2d 472, 487 (D.C. Cir. 1980) (holding that government agents "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"). Courts in this district have recognized that risk as a firm basis for a strong privacy interest. *See, e.g., Jud. Watch, Inc. v. Dep't of State,* 875 F. Supp. 2d 37, 47 (D.D.C. 2012). "[T]raditionally, the privacy interests at stake in an Exemption 7(C) analysis are those resulting from the stigma of being associated with a criminal investigation." *Tokar*, 304 F. Supp. 3d at 99.

Courts have held that Exemption 7's law enforcement purpose encompasses a wide variety of records and information including records related to enforcement of immigration and naturalization laws. *Rojas-Vega v. ICE,* 302 F. Supp. 3d 300, 309 (D.D.C. 2018); *see also Nikaj v. Dep't of State*, Civ. A. No. 19-0496, 2019 WL 2602520, at *3 (W.D. Wash. June 25, 2019) (finding visa application determinations have "'salient characteristics of "law enforcement" contemplated'"); *Schiller v. INS*, 205 F. Supp. 2d 648, 659 (W.D. Tex. 2002) (stating that "law enforcement" for purposes of FOIA includes regulatory proceedings); *McErlean v. Dep't of Just.*, Civ. A. No. 97-7831, 1999 WL 791680, at *8 (S.D.N.Y. Sept. 30, 1999) (stating that "it is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes'").

**II.     The Court Should Reconsider Its Ruling that Requires the Release of CBP Officer Names.**

Defendants seek to supplement the record with details about threats to CBP officers, attacks and destruction of the property of CBP officers, as well as descriptions of websites that encourage readers to harm CBP employees. As noted above, CBP was not previously consulted on the release of this document (an email to and from USCIS employees) or the justification for the redactions. 2d Howard Decl. ¶ 7.

Preliminarily, all the CBP officers whose names appear in the email from Rhonda Roberts, dated July 23, 2019, are law enforcement personnel, specifically U.S. Border Patrol Agents and are CBP employees are employed by a law enforcement agency. 2d Howard Decl. ¶ 10. That fact does and did not change by virtue of their temporary role on the Task Force referenced in the e-mail. *Id.* These low-level CBP employees have a substantial privacy interest in their names being withheld based on actual instances of harm and harassment to other Department employees, and U.S. Border Patrol Agents specifically, in the recent past that is reasonably likely to occur in the future. *Id.* ¶ 12.

Federal employees involved in law enforcement do possess, by virtue of the nature of their work, substantial privacy interests in their identities. *See Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (upholding protection of names of investigators); *Hulstein v. DEA*, 671 F.3d 690, 695-96 (8th Cir. 2012) (protecting names and signatures of DEA agents); *Moore v. Obama*, No. 09-5072, 2009 WL 2762827, at *1 (D.C. Cir. Aug. 24, 2009) (per curiam) (protecting names and a phone number of FBI employees); *Wood v. FBI*, 432 F.3d 78, 87-89 (2d Cir. 2005) (protecting investigative personnel of FBI's Office of Professional Responsibility); *Fabiano v. McIntyre*, 146 F. App'x 549, 549 (3d Cir. 2005) (affirming withholding of names and telephone numbers of FBI Special Agent, FBI support employees, and non-FBI federal employee); *Fiduccia*

*v. Dep't of Just.,* 185 F.3d 1035, 1043-45 (9th Cir. 1999) (withholding DEA and INS agents' names); *New England Apple Council v. Donovan*, 725 F.2d 139, 142-44 (1st Cir. 1984) (finding that inspector general investigator has "interest in retaining the capability to perform his tasks effectively by avoiding untoward annoyance or harassment"); *O'Keefe v. Dep't of Def.,* 463 F. Supp. 2d 317, 324 (E.D.N.Y. 2006) (protecting identities of DOD investigators). In addition, as personnel of a "security agency," the CBP employee mentioned in the records has a substantial privacy interest in their information not being released to the public. *See* Memorandum from CBP Acting Commissioner Mark Morgan, All CBP Designated as a Security Agency under Office of Personnel Management (January 31, 2020).

Mr. Howard references multiple instances where CBP employees have experiencing harassment solely based on their employment with CBP. *See* 2d Howard Decl. ¶ 15.

In June 2018, former DHS Deputy Secretary Claire Grady warned all DHS personnel of the risks and general precautionary measures for personnel to take. *Id*. ¶ 16. This warning coincided with thousands of ICE employees having their personally identifying information, including home addresses and pictures, shared on social media that had been obtained through the aggregation of publicly available information. *Id*. Specific incidents where ICE employees have been targeted include employees of ICE's Office of the Principal Legal Advisor having their homes vandalized (homes were egged, paintballed, and graffitied) after flyers with their pictures were posted in their respective neighborhoods in the summer of 2018. *Id.* Given the heightened sense of animus directed at DHS' missions, as demonstrated by the cited incidents, publication of an individual's association with DHS could reasonably subject these low-level line employees to harassment, threats, violence, attempts to influence, identity theft, and other similar inappropriate conduct. *Id*. Consequently, DHS employees have a legitimate interest in having their names and

identities protected from disclosure because they are associated with a federal department that has multiple law enforcement and security missions. *Id.*

In June of 2019, U.S. Border Patrol Agents in Idaho received threats via fax and the group "Antifa" posted threats to law enforcement on social media threatening to use "acid milkshakes" to inflict chemical burns. *Id.* ¶ 17. In July 2019, at the CBP Tucson Field Office, multiple marked CBP vehicles, parked in a non-government parking lot, were vandalized overnight. *Id.* Throughout July 2019, an activist group posted online the personally identifiable information—including names, dates of birth, home addresses, and links to Facebook accounts—of 18 U.S. Border Patrol Agents. *Id.* ¶ 18. The doxing also included a 45-minute video on YouTube, which made a list of demands and threatened U.S. Border Patrol Agents if demands were not met. *Id.* CBP employees also regularly receive threats on government phones by callers using altered numbers and spoofed voices and have been harassed on public transportation solely for their perceived affiliation with the DHS or CBP. *Id.* ¶ 17.

In 2019 and 2020, there were threatening posts on Twitter including one in July 2019 calling for "death to all CBP agents" and another in January 2020 stating "Kill CBP." *Id.* ¶ 19.

In March 2022, a U.S. Border Patrol Agent reported a gunshot fired through the front door of his home, which he believes was from construction personnel working on a house nearby who saw the Agent in partial uniform and had animosity towards his work with U.S. Border Patrol. *Id.* ¶ 20.

All CBP employees in Portland, Oregon, must hide their CBP affiliation out of fear that their personal information will leak online. *See* Chantal Da Silva, CBP Chief Says Feds Don't Wear Name Badges Due to Fears of Being 'Doxxed', Newsweek (July 23, 2020, 11:42 AM), https://www.newsweek.com/cbp-chief-says-feds-dont-wear-name-badges-due-doxing-1519994

As a result of these types of incidents, the Office of Personnel Management designated CBP as a "Security Agency," exempting all CBP employees, not just frontline law enforcement, from OPM's salary information disclosure policy. *Id*. ¶ 21.

## CONLUSION

Accordingly, Defendants respectfully request that the Court reconsider its March 11, 2022, Order, find that the privacy interests are greater than the public interest, and permit Defendants to redact the CBP officers' names in an email from Rhonda Roberts, dated July 23, 2019, under Exemptions 6 and 7(C).

Dated: June 21, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Chief, Civil Division

By: */s/ T Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
Civil Division
601 D Streets, NW
Washington, D.C. 20530
(202) 252-7558
tony.quinn2@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN IMMIGRATION COUNCIL, *et al.*, | ) ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) ) | Civil Action No. 19-2965 (RC) |
| U.S. CUSTOMS AND BORDER PROTECTION, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) ) ) | |

**[PROPOSED] ORDER**

The matter is before the Court upon the Defendants' motion for reconsideration, pursuant to Federal Rule of Civil Procedure 54(b), of the Court's March 11, 2022, Order denying Defendants' motion for summary judgment as to the redaction of CBP officers names in an email from Rhonda Roberts, dated July 23, 2019, under Exemptions 6 and 7(C). (ECF No. 38).

Upon consideration of the Defendants' motion, the entire record herein, and for good cause shown, it is hereby

**ORDERED**, that the motion is **GRANTED**. It is further

**ORDERED**, that Defendants shall be permitted to redact the CBP officers' names in an email from Rhonda Roberts, dated July 23, 2019, under Exemptions 6 and 7(C).

**SO ORDERED** this _____ day of _____, 2022.

_____
**RUDOLPH CONTRERAS**
United States District Judge