UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AMERICAN IMMIGRATION COUNCIL, | : | | |
| *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 19-2965 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 28, 30, 51 |
| | : | | |
| U.S. CUSTOMS AND BORDER PATROL, | : | | |
| *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

DENYING DEFENDANTS' MOTION FOR RECONSIDERATION AS MOOT; GRANTING IN PART AND
DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGEMENT; GRANTING
IN PART AND DENYING IN PART PLAINTIFFS' RENEWED CROSS-MOTION FOR SUMMARY
JUDGMENT

I.  INTRODUCTION

Plaintiffs American Immigration Council and Tahirih Justice Center filed this suit to

require Defendants the Department of Homeland Security ("DHS"), U.S. Citizenship and

Immigration Services ("USCIS"), and U.S. Customs and Border Protection ("CBP") to respond

appropriately to Plaintiffs' Freedom of Information Act ("FOIA") requests.  The requests

concern a program for using CBP agents to conduct credible fear interviews, which is a part of

the asylum-seeking process.  This Court previously granted in part and denied in part the parties'

cross-motions for summary judgment and ordered Defendants to submit several FOIA

Exemption 5-related documents to the Court for *in camera* review.  *Am. Immigr. Council v. U.S.

Customs & Border Patrol*, 590 F. Supp. 3d 306, 335 (D.D.C. 2022).  Defendants subsequently

submitted these documents, and the parties agreed that the Court could resolve the dispute

concerning these documents based on the existing briefing.  Having now inspected these documents, the Court will order Defendants to disclose some (but not all) of them.

## II.  BACKGROUND

The Court assumes familiarity with the facts of this dispute.  *See Am. Immigr. Council*, 590 F. Supp. 3d at 315–17.  Following the Court's prior decision, Defendants delivered the disputed Exemption 5 documents to the Court for *in camera* review.  Defendants also filed a corrected supplemental *Vaughn* index explaining their reasons for withholding these documents. *See* Corrected Suppl. *Vaughn* Index, ECF No. 50-1.  At the June 7, 2022 status conference, the parties agreed that the Court could resolve the propriety of Defendants' Exemption 5 withholdings in these documents without any supplemental briefing.  The Court will therefore treat the parties' positions concerning these *in camera* documents as renewed cross-motions for summary judgment.  This dispute is ripe for decision.

Also pending before the Court is Defendants' Motion for Reconsideration.  Defs.' Mot. for Reconsideration, ECF No. 51.  This motion concerns the Court's prior decision on the issue of the withheld names of U.S. Border Patrol agents under FOIA Exemptions 6 and 7(C).  *Id.* at 1. The parties have since represented to the Court that they settled this issue on their own.  *See* Joint Status Report ¶¶ 1–3 (Feb. 28, 2023), ECF No. 67.  Therefore, the Court denies Defendants' Motion for Reconsideration as moot.  *See* Min. Order (Aug. 1, 2022).  The sole remaining issue is the propriety of Defendants' Exemption 5 withholdings in the *in camera* documents.[1]

---

[1] The Court's prior decision also ordered CBP to "conduct a search reasonably calculated to uncover all relevant documents from the expedited requests[.]" *Am. Immigr. Council*, 590 F. Supp. 3d at 322.  This issue appears resolved, so the Court will not consider it.  *See* Joint Status Report ¶ 4 (Feb. 28, 2023) (representing that "[t]he sole matter in dispute is the documents before the Court for *in camera* review").

### III.  LEGAL STANDARD

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA was intended "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted).  FOIA requests thus provide individuals with the opportunity to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by one of nine exemptions.  *See* 5 U.S.C. § 552(a)(3), (a)(4)(B), (b), (c); *see also* *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017).

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see, e.g.*, *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (concluding that unsubstantiated claims of factual controversies cannot defeat a summary judgment decision in a FOIA case). FOIA cases are typically resolved through summary judgment because in FOIA cases there is rarely any factual dispute; instead, these cases center on how the law is applied to the records at issue.  *See Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009))).  Accordingly, in a FOIA suit, an agency is entitled to summary judgment "if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any

exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure,' while the 'burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

In a FOIA suit, the court shall determine a motion for summary judgment de novo.  *See* 5 U.S.C. § 552(a)(4)(B); *Life Extension Found., Inc. v. IRS*, 915 F. Supp. 2d 174, 179 (D.D.C. 2013).  Therefore, when assessing non-disclosure decisions in a FOIA action, the court may rely solely on "affidavits or declarations if they describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Life Extension Found.*, 915 F. Supp. 2d at 179 (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pronin v. Fed. Bureau of Prisons*, No. 17-cv-1807, 2019 WL 1003598, at *3 (D.D.C. Mar. 1, 2019).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Scudder v. CIA*, 254 F. Supp. 3d 135, 140 (D.D.C. 2017) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal citations omitted)).  However, exemptions are to be "narrowly construed," *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 50

(D.D.C. 2019) (quoting *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007)), and "conclusory and generalized allegations of exemptions are unacceptable," *Prop. of the People, Inc.*, 330 F. Supp. 3d at 380 (quoting *Morley*, 508 F.3d at 1114–15).  Accordingly, an agency must do more than provide "summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Just.*, 830 F.2d 210, 221 (D.C. Cir. 1987)).  "When an agency invokes an exemption, it must submit affidavits that provide the kind of detailed, scrupulous description of the withheld documents that enables a District Court judge to perform a de novo review." *Tokar v. U.S. Dep't of Just.*, 304 F. Supp. 3d 81, 89 (D.D.C. 2018) (cleaned up).

## IV.  ANALYSIS

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The Supreme Court and the D.C. Circuit have construed Exemption 5 to exempt documents "normally privileged in the civil discovery context." *Sears*, 421 U.S. at 149; *see also Martin v. Off. of Special Couns.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  Exemption 5 thus "'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege." *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 376 (D.D.C. 2018) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks and citation omitted)); s*ee also Baker & Hostetler LLP v. U.S. Dep't Com.*, 473 F.3d 312, 321 (D.C. Cir. 2006).

For the deliberative process privilege—the sole privilege at issue here—to apply, the record must "bear on the formulation or exercise of agency policy-oriented judgment." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435(D.C. Cir. 1992).  An agency typically cannot withhold "[p]urely factual material . . . unless it reflects an 'exercise of discretion and judgment calls.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)).  The party invoking the privilege must establish that the record is both predecisional and deliberative.  *See Prop. of the People*, 330 F. Supp. 3d at 382.  "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made."  *Petroleum Info. Corp.*, 976 F.2d at 1434 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g. Corp.*, 421 U.S. 168, 184 (1975)).  A document can still be predecisional even if it postdates a particular agency decision, so long as the document concerns "agency choices about what rationales, justifications, and limitations to provide—and which to leave out—in articulating an important agency decision," because "[d]ebate and discussion about such statements precede—are predecisional to—the actual determination of how best both to define the scope and contours of the new policy, and to persuasively communicate its terms and rationale to the public."  *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 24 (D.C. Cir. 2022).  A document is deliberative if "it reflects the give-and-take of the consultative process."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *accord Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021).  In other words, it is deliberative if it was "prepared to help the agency formulate its position." *Campaign Legal Ctr.*, 34 F.4th at 23 (citation omitted).

"[T]he agency invoking the deliberative process privilege must show (1) 'what deliberative process is involved,' and (2) 'the role played by the documents in issue in the course of that process,'" and "should also explain (3) the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document,' and (4) the 'relative positions in the agency's chain of command occupied by the document's author and recipient.'" *Jud. Watch, Inc.*, 20 F.4th at 54 (citation omitted) (quoting *Senate of the Com. of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987)).  The Court will first consider the disputed DHS documents and then turn to the disputed USCIS documents.

### A.  DHS Documents

1.  "Issue paper regarding U.S. Border Patrol Credible Fear Program, dated May 16, 2019"
(DHS-001-0973-1739 to -1742)

The first document in dispute is an issue paper dated May 16, 2019 regarding the U.S. Border Patrol's Credible Fear Pilot Program.  The Court's previous decision asked Defendants to "more clearly show (1) 'what deliberative process is involved,' and (2) 'the role played by the documents in issue in the course of that process,'" and "should also explain (3) the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document,' and (4) the 'relative positions in the agency's chain of command occupied by the document's author and recipient.'" *Am. Immigr. Council*, 590 F. Supp. 3d at 325 (quoting *Jud. Watch, Inc.*, 20 F.4th at 54 (citation omitted)).  The Court finds that Defendants have failed to show that this document is predecisional and deliberative.

For starters, this document is not predecisional because it merely "embod[ied] or explain[ed] a policy that the agency adopt[ed]." *Id.* (quoting *Reps. Comm.*, 3 F.4th at 362)).  Nothing in these pages provides evidence describing "what decision or policy this document was leading towards." *Id.*  Instead, the document provides an overview of Defendants' credible fear

pilot program as it was "already established" and being "implement[ed]." *Id.* at 328 (citation omitted). The document provides training details (such as group sizes, curriculum, locations, and schedules), interview requirements, and plans for expanding the pilot program. Although Defendants assert that the document was subsequently revised on April 27, 2020, "[t]he fact that the document is a non-final draft does not on its own demonstrate that the document is predecisional." *Id.* at 325. Put differently, no amount of subsequent drafts would make this document any more predecisional because this document is not predecisional to begin with.

Nor is the document deliberative. "A document that serves only to explain an existing agency policy 'cannot be considered deliberative.'" *Reps. Comm.*, 3 F.4th at 367 (citation omitted). Here, "[t]he government has failed to identify any deliberative component" to the document; nor could it, because the document "simply describe[s] already-made and in-place policy choices." *Id.* To give just one example, the document summarizes the training of a group of U.S. Border Patrol officers *that had already begun* weeks before the document's inception. Defendants maintain that this document "was one of the main documents being used to consolidate anticipated decision points and consideration for the pilot program, including specifically identifying information and policy discussions that were under consideration but had yet been decided upon." Corrected Suppl. *Vaughn* Index at 1.[2] But the document does not read that way at all; it does not reflect or suggest the existence of a "give-and-take" that is indicative of the "consultative process." *Reps. Comm.*, 3 F.4th at 362 (citation omitted). The document's timeline of events, which contains green highlights indicating "completed" and red highlights indicating "pending," is also not deliberative because these highlights provide purely factual descriptions of the implementation of the pilot program. *See Am. Immigr. Council*, 590 F. Supp.

---

[2] Page cites of this index refer to the ECF pagination.

3d at 325 ("Statuses of action items, without more, could be considered facts that do not necessarily reflect any deliberation or give-and-take.").  Finally, although Defendants aver that this issue paper was a draft, "drafts must also be deliberative in content" to qualify for the deliberative process privilege, and this draft is not.  *Reps. Comm.*, 3 F.4th at 367.  Thus, information in this document is not exempt under Exemption 5.

2.  "Draft Briefing Memo" (DHS-001-0973-2747 to -2770)

DHS describes this document as a "24-page draft briefing memo titled 'CBP Migration Statistics - Fiscal Year 2019 Year to Date.'"  *Am. Immigr. Council*, 590 F. Supp. 3d at 326 (quoting 3d Pavlik-Keenan Decl. at 9).  It "contains a draft water mark on all pages, is undated, and contains placeholders throughout for input from certain DHS employees."  *Id.*  It also has "redline edits and bubble comments throughout" and "reflects internal discussions between DHS employees, including information DHS may have determined was confidential and not appropriate for release."  *Id.*  DHS claims that the document "contain[s] non-finalized statistics, a plan for the dissemination of this information, and draft talking points for the briefing on these statistics."  Corrected Suppl. *Vaughn* Index at 2.  In addition, "[t]he draft document also contains the non-finalized draft news release and the draft media advisory."  *Id.*

This document is predecisional.  Defendants explain that "[t]he process at issue is the decision of what to say during the briefing and how to announce the statistics[.]"  *Id.*  The strategic decisions being discussed in this document were not yet final: as evidence, the entire document has the watermark "DRAFT,"; some sections contain highlighting prompting different individuals to fill in additional information; some statistics are highlighted for confirmation or further update; and there are several unresolved comment bubbles.  Because this document was

"prepared in order to assist an agency decisionmaker" in the press briefing, it was predecisional. *Petroleum Info. Corp.*, 976 F.2d at 1434.

The document is also deliberative. Disclosing these talking points and related information would "reveal the give and take of the consultative process." *Am. Immigr. Council*, 590 F. Supp. 3d at 330. Because the document was prepared for high-level officials' media remarks, they "would have been reviewed at high levels within those components." Corrected Suppl. *Vaughn* Index at 2. Although some of the information in this document seems factual— such as statistics about border crossings and medical costs—these are "facts and statistics that best show some policy in a favorable light" and thus "would reveal the agency's deliberative process." *Am. Immigr. Council*, 590 F. Supp. 3d at 330; *see also Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 139 (D.D.C. 2021) ("[B]ecause an agency's public relations efforts 'often require a prudent selection and presentation of factual information,' divulging even 'facts' from [the agency's] communications plans 'would in all likelihood reveal the agency's deliberations about how to present those facts.'" (quoting *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 330 F. Supp. 3d 293, 306 (D.D.C. 2018))). For example, one comment bubble in the talking points proposes adding language describing the statistics in a way that portrays the agency's actions in a more favorable light. The document also provides the speaker(s) key messages and objectives for the press briefing, including anticipated media questions and proposed responses.

The Court also finds that disclosure of this document would cause reasonably foreseeable harm under the FOIA Improvement Act of 2016. *See Reps. Comm.*, 3 F.4th at 369; 5 U.S.C. § 552(a)(8)(A)(i)(I). The *Vaughn* index explains that disclosure of this draft would "inhibit the candid discussion of issues between employees" such as "deliberations about media strategy for

future releases of CBP statistics, the release of which is frequent, and talking points on such statistics." Corrected Suppl. *Vaughn* Index at 2.  The Court agrees that revealing the details of Defendants' internal deliberations about how to present these statistics and discuss their actions in the context of the hotly debated field of immigration policy would harm the deliberative process that Exemption 5 seeks to protect. *See Campaign Legal Ctr.*, 34 F.4th at 23 ("[T]he [deliberative process] privilege is designed to improve governmental decisionmaking by encouraging public servants to speak candidly with one another and to fully flesh out the reasons for and against potential agency actions before they are taken.").  Thus, Defendants are entitled to withhold information in this document under Exemption 5.

### 3.  "Draft Outline" (DHS-001-0973-2742 to -2746)

 Defendants describe this document as "a 5 page working draft document titled 'Department of Homeland Security Strategy to Address Crisis at the Southern Border Draft Outline.'" Corrected Suppl. *Vaughn* Index at 1.  Defendants represent that this document is a "working version" that it is "not the final version of the document," although "no final version of the document exists." *Id.*

This document is predecisional.  Defendants aver that the undated "document is a working draft version of an internal communications strategy and proposed six month timeline to bolstering security circulating for review and comment between DHS senior leaders[.]" *Id.*  As further evidence that this document "was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made," *Petroleum Info. Corp.*, 976 F.2d at 1434 (citation omitted), Defendants explain that "[t]his document is a precursor to the development of a plan to share with the White House," Corrected Suppl. *Vaughn* Index at 1.  Even though no final version of the document exists, "the draft is still a draft and thus still pre-

decisional." *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014); *see id.* ("A

privilege contingent on later events—such as whether the draft ultimately evolved into a final

agency position—would be an uncertain privilege, and as the Supreme Court has said, an

uncertain privilege is 'little better than no privilege at all.'" (quoting *Upjohn Co. v. United

States*, 449 U.S. 383, 393 (1981))).

This document is also deliberative.  The outline describes various goals to address the

crisis at the southern border, going into detail about objectives and actions to meet those goals.

True to its description—"an internal communications strategy,"—it was "circulating for review

and comment between DHS senior leaders, specifically senior leaders associated with the DHS

Office of Strategy, Policy and Plans and attorneys with the DHS Office of the General Counsel."

Corrected Suppl. *Vaughn* Index at 1.  The outline, which "proposed actions as to steps DHS

should take to address the crisis at the Southern Border, and big-picture departmental strategies

to address border security/foreign policy as to a number of countries" was subject to deliberation.

*Id.*

The Court also finds that disclosure of this document would cause reasonably foreseeable

harm.  Defendants have shown that disclosure "would mislead the public and inhibit the candid

and forthright discussion of issues between senior leaders[.]"  *Id.* at 2.  The Court finds that

forcing Defendants to disclose draft outlines describing their yet-to-be finalized strategies for

tackling immigration challenges would chill the candid exchange of ideas on this heated topic.

Thus, Exemption 5 protects information in this document from disclosure.[3]

---

[3] Defendants also raise two new arguments: (1) that "the attorney-client privilege also
applies to this document because these communications are between DHS senior leaders and
their counsel"; and (2) that "some information contained in this document is confidential, law
enforcement sensitive, the disclosure of which may cause harm to US national security pursuant
to FOIA Exemption 7(E)."  Corrected Suppl. *Vaughn* Index at 1–2.  Because the Court finds

4.   "CBP meeting mk edits Clean v1.1" (DHS-001-0973-CBP-16 to -23)

This document is "an internal DHS document entitled 'Issues for Discussion between CBP and USCIS,' which consists of 8 pages of confidential, internal communications pertaining to a number of immigration programs and initiatives."  *Am. Immigr. Council*, 590 F. Supp. 3d at 327 (quoting 3d Pavlik-Keenan Decl. at 11).  The document consists of background on various topics with USCIS talking points for each topic.

This document is predecisional.  The author was an USCIS official, and the recipient was another USCIS official "who had authority to discuss this wide range of pending issues needing a decision with CBP."  Corrected Suppl. *Vaughn* Index at 3.  The talking points "helped prepare the USCIS attendees" for a discussion between USCIS and CBP concerning "decisions and policies on 10 separate initiatives."  *Id.*  The document's background information helped "to inform the USCIS officials involved in the discussion with CBP officials of these initiatives, in advance of a decision being made as to how these issues would be resolved."  *Id.*  Although it is unclear whether this document is in draft form, *see Am. Immigr. Council*, 590 F. Supp. 3d at 327, that is not dispositive in this context.  Given that talking points are "typically documents 'prepared by [government] employees for the consideration of [government] decision-makers' in determining how to respond," even the "final" version of talking points may be protected because "the 'final decision' of the agency was what the senior official . . . ultimately said."  *Am. Ctr. for L. & Just. v. United States Dep't of Just.*, 392 F. Supp. 3d 100, 106 (D.D.C. 2019) (alterations in original) (citation omitted).  The talking points here "helped prepare the USCIS attendees" for their meeting with CBP, Corrected Suppl. *Vaughn* Index at 3—nothing suggests

---

Defendants' withholding proper under the deliberative process privilege, it need not consider these new arguments.

13

that they were adopted by "verbatim recitation" or as an express statement of the agency's position, *Am. Ctr. for L. & Just.*, 392 F. Supp. 3d at 108; *see also Ctr. for Pub. Integrity v. Fed. Election Comm'n*, 332 F. Supp. 3d 174, 180 (D.D.C. 2018) ("A meeting agenda prepared before the meeting is necessarily predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting.").

The document is also deliberative.  It "reflect[s] a part of the give-and-take between the drafter and the [USCIS attendees] leading up to [their] external interactions." *Am. Ctr. for L. & Just.*, 392 F. Supp. 3d at 106. The document's title—"CBP meeting mk edits Clean v1.1"—also shows that these talking points were edited and refined.  The document is also deliberative in the sense that the USCIS attendees, as with anyone referencing talking points, "may elect to use all, some, or none of the talking points prepared for [them]." *Am. Ctr. for L. & Just. v. U.S. Dep't Just.*, 325 F. Supp. 3d 162, 173 (D.D.C. 2018).  In short, the talking points are deliberative because they were "prepared to help the agency formulate its position." *Campaign Legal Ctr.*, 34 F.4th at 23 (citation omitted).

Release of this document would cause reasonably foreseeable harm.  DHS has explained that the initiatives under consideration in the talking points "remain under DHS/USCIS/CBP consideration currently," so the release of premature, non-finalized agency positions on sensitive immigration topics "would cause harm to DHS'[s] position in litigation, confusion to the public regarding regulatory actions, and hinder the candid discussion of issues among employees." Corrected Suppl. *Vaughn* Index at 3.  Thus, Defendants' withholding of information in this document under Exemption 5 is proper.

### B.  USCIS Documents[4]

USCIS Bates 3-13 consists of two issue papers: USBP Credible Fear Pilot Program (May 8, 2019) and USBP Credible Fear Pilot Program (April 17, 2019) (together, Bates 3-11) and another issue paper focused on CBP employee training (May 1, 2019) (Bates 12-13).  The Court previously found that Defendants' withholding of these documents was unjustified because they had not adequately explained how they were predecisional or deliberative.  Now, as then, the Court still finds that Defendants have not shown that these documents are entitled to Exemption 5's deliberative process privilege.

The April 17, 2019 and May 8, 2019 issue papers are quite similar to the May 16, 2019 issue paper described above in the Court's analysis of the DHS documents.  Each of these documents describes how the pilot program works and contains a list of action items followed by notation indicating the status of these action items.  The May 8, 2019 issue paper is most similar to the May 16, 2019 issue paper in that both apparently originated after the pilot program had already kicked off.  As with the May 16, 2019 issue paper, the May 8, 2019 issue paper merely "embod[ied] or explain[ed] a policy that the agency adopt[ed]" by "explaining actions to be taken in implementing an already established pilot program." *Am. Immigr. Council*, 590 F. Supp. 3d at 325, 328 (first part quoting *Reps. Comm.*, 3 F.4th at 362)).  Thus, it is predecisional. The April 17, 2019 issue paper also concerns the pilot program but focuses on preliminary steps leading up to the launch of the program.  Its predecisional nature is a closer call because by

---

[4] Defendants also delivered USCIS Bates 66-67 to the Court for *in camera* review.  The Court has no occasion to analyze these pages because Plaintiff never disputed the withholding of these specific pages. *Compare* March 27, 2020 Production Part 1 *Vaughn* Index at 14–15, ECF No. 28-4 (explaining basis for withholding USCIS Bates 66-70), *with* Mem. of P. & A. in Support of Pls.' Cross-Mot. for Summ. J. and Opp'n to Defs.' Mot. for Summ. J. at 10, ECF No. 29-2 (listing withholdings in dispute).

implying that the pilot program had not yet kicked off, it supports the notion that the contours of

the program were still not final.  On the other hand, even if the program was not finalized, the

document may be final with respect to preliminary steps Defendants planned to take to initiate

the program.  Indeed, Defendants did not say whether this document "describing how [the steps

leading up to the launch of] the pilot program would work ended up being adopted by the

agency, in which case [the document] would not necessarily continue to be predecisional."  *Id.* at

329 (quoting *Reps. Comm.*, 3 F.4th at 362).

The May 1, 2019 issue paper—the one centered on CBP employee training—is also a

closer call because it indicates that the training plan requires additional approval, which supports

Defendants' argument that this document is predecisional.  But once again, Defendants did not

indicate whether any supposed additional approval merely adopted this version as the final

version of the training plan.  To muddle matters further, as with last time, Defendants' *Vaughn*

index "lists [these] three documents in the same entry," making it difficult for the Court to

carefully consider each issue paper on its own.  *Id.* at 328.  The Court need not dwell on the

question of whether the April 17 and May 1 issue papers are predecisional, however, because in

all events it finds that these issue papers are not deliberative.

These documents are not deliberative for the same reasons the Court described before.

*See Am. Immigr. Council*, 590 F. Supp. 3d at 328–29.  Defendants still failed to show how these

issue papers "reveal the deliberative process used to evaluate the Pilot Program, the status of

such an internal review, and the methods utilized to conduct such review."  *Id.* at 329; Corrected

Suppl. *Vaughn* Index at 4.  Now, as then, "[t]he documents are described as documenting how

the pilot program, including its training, would work; there is no indication that they contain the

drafters' impressions or evaluations of the program."  *Am. Immgr. Council*, 590 F. Supp. 3d at

329.  Because Defendants have not given the Court "a clear understanding of what deliberative

process is asserted and the relationship between the document and that deliberative process," the

Court finds that Exemption 5 does not apply here.  *Id.* at 326.  Thus, Defendants cannot withhold

information under Exemption 5 from USCIS Bates 3-13.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration (ECF No. 51) is

denied as moot, Defendants' Renewed Motion for Summary Judgment (ECF No. 28) is granted

in part and denied in part; and Plaintiffs' Renewed Cross-Motion for Summary Judgment (ECF

No. 30) is granted in part and denied in part.  An order consistent with this Memorandum

Opinion is separately and contemporaneously issued.


Dated:  April 3, 2023                                      RUDOLPH CONTRERAS
                                                          United States District Judge